UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
BOARD OF TRUSTEES OF THE UFCW LOCAL
174 PENSION FUND,

                      Plaintiff,

       -against-

KARL EHMER DELICATESSEN f/k/a
GLENDALE PORK STORE, INC. d/b/a
KARL EHMER DELICACY HOUSE,

                      Defendant.
-----------------------------------------------------------X

Report &
Recommendation
10-CV-3188 (RJD)

GOLD, S., U.S.M.J.:

      Plaintiff brings this action pursuant to the Employer Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145, as amended by the Multiemployer Pension Plan Amendment Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381 *et. seq.*, to recover money allegedly owed by defendant for withdrawal liability pursuant to the MPPAA. Upon plaintiff's application and in light of defendant's failure to appear in or otherwise defend this action, the Clerk of Court noted the default of the defendant on September 17, 2010.[1] Docket Entry 6. The Honorable Raymond J. Dearie then referred the matter to me to report and recommend. Docket Entry 7.

## DISCUSSION

      Once found to be in default, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc., v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Even after a defendant has defaulted, "[a] plaintiff must...establish that on the law it is entitled to the relief it seeks, given the facts as

---

[1] Karl Ehmer Delicatessen is currently an inactive corporation, dissolved as of October 27, 2010, according to the records of the New York State, Department of State, Division of Corporations. *See* http://appext9.dos.state.ny.us/corp_public/corpsearch.entity_search_entry. A dissolved corporation, however, may be sued while it is winding down its affairs. *See* N.Y. BUS. CORP. LAW § 1006(a)(4).

established by the default." *U.S. v. Ponte*, 246 F. Supp. 2d 74, 76 (D. Me. 2003) (citation omitted). *See also Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (recognizing the court's authority, even after default, to determine whether plaintiff has stated a cause of action).

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not. *See Greyhound Exhibitgroup*, 973 F.2d at 158. Rather, claims for damages generally must be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed. *Id.* A court must ensure that there is a basis for the damages sought by a plaintiff before entering judgment in the amount demanded. *See Fustok v. ContiCommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence. *See* FED. R. CIV. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991); *Fustok*, 873 F.2d at 40.

The following documents are annexed as exhibits to plaintiff's complaint: (a) an October 27, 2006 Notice and Demand for Payment of Withdrawal Liability, (b) a March 8, 2007 Notice of Failure to Make Payments on Withdrawal Liability, (c) a May 21, 2007 Notice of Default, (d) a December 20, 2007 Notice and Demand for Payment of Redetermination Liability, (e) a February 18, 2008 second Notice for Payment of Redetermination Liability, and (f) a June 26, 2009 Notice and Demand for Payment of Reallocation Liability. Docket Entry 1. In support of its motion for a default judgment, plaintiff has submitted an affidavit of its counsel, in which the amount of withdrawal liability, interest, costs and attorney's fees are indicated. *See* Hirschhorn Aff., Docket Entry 4. In response to my Order seeking its actuary reports and an explanation of

the interest rate charged, Docket Entry 8, plaintiff submitted an affidavit from its actuary. Reid Decl., Docket Entry 9. Because defendant has waived its right to contest the withdrawal liability, *see* discussion *infra*, and has failed to submit any opposition to plaintiff's motion for a default judgment, a hearing on the issue of damages is not warranted.

A.  *Withdrawal Liability*

I have reviewed plaintiff's complaint and conclude that the well-pleaded allegations establish the elements required to state a claim for withdrawal liability pursuant to the MPPAA, 29 U.S.C. §§ 1381, 1382, 1399, 1401. Simply put, when an employer ceases to have an obligation to contribute under a multi-employer plan or when an employer ceases to make contributions as required by a multi-employer plan, the plan sponsor notifies the employer of its withdrawal liability and demands that payment be made pursuant to a specified schedule. 29 U.S.C. § 1399(b). An employer who disputes the sponsor's calculation of withdrawal liability must initiate arbitration proceedings within a specified time. 29 U.S.C. § 1401(a). If no arbitration proceeding is initiated, the amounts demanded by the sponsor become due and owing, and the sponsor may bring a civil action to recover them. 29 U.S.C. § 1401(b)(1). *See also Finkel v. Fred Todino & Sons, Inc.*, 2010 WL 4646493, at *3 (E.D.N.Y. Oct. 8, 2010) (discussing the elements for liability under the MPPAA).

Similarly, when a multi-employer plan is terminated, the plan sponsor must notify the participating employers of their withdrawal liability. 29 U.S.C. § 1399(c)(1)(D); 29 C.F.R. § 4219.11. In the event of a default in payment, the entire amount of an employer's withdrawal liability, together with accrued interest, becomes due immediately. 29 U.S.C. § 1399(c)(5). Plaintiff has satisfied the statutory prerequisites for imposing withdrawal liability on defendant. Defendant withdrew from the Fund administered by plaintiff in 2004, giving rise to withdrawal

3

liability. Compl. ¶¶ 7, 8. Plaintiff provided defendant with a demand letter that included a payment schedule. *Id*. ¶ 9 & Ex. A. Defendant failed to pay, and plaintiff notified defendant of its default. *Id*. ¶¶ 10-12 & Exs. B, C. Subsequently, the plan terminated. *Id*. ¶ 13. Plaintiff recalculated defendant's liability in light of the termination of the plan and notified defendant of the amount owed, which is referred to in plaintiff's complaint as defendant's reallocation liability. *Id*. ¶ 16 & Ex. F. Apparently, defendant did not respond to any of plaintiff's notices, make any payments, or initiate an arbitration proceeding. Accordingly, defendant has waived its right to contest the amount of withdrawal liability. I therefore respectfully recommend that defendant be held liable for withdrawal liability in the amount of $296,592, the amount calculated by plaintiff to be due and owing. *See* Hirschhorn Aff. ¶ 10; Compl. ¶ 16 & Ex. F.[2]

*B.     Interest*

Plaintiff also seeks interest on the withdrawal liability, which is mandatory pursuant to ERISA, 29 U.S.C. §1132(g)(2), and the MPPAA, 29 U.S.C. § 1399(c)(3).[3] According to the MPPAA, interest shall accrue from the date of the first delinquent payment. 29 U.S.C. § 1399(c)(5). *See also* 29 C.F.R. § 4219.32(d).[4] Plaintiff indicates that the first delinquent payment occurred on December 27, 2006, which is sixty days from the date plaintiff provided notice of defendant's withdrawal liability. Compl. ¶ 10. The MPPAA provides that an employer must begin withdrawal liability payments within sixty days from the demand, notwithstanding any request for review of the amounts alleged to be owing. 29 U.S.C. § 1399(c)(2).

---

[2] The calculations underlying the reallocation liability amount are set forth in Exhibit F, which is referenced in the Declaration of David B. Reid, the actuary whose firm computed the amount. *See* Reid Decl. ¶ 4.

[3] ERISA's mandatory damages provision applies to an employer's withdrawal liability under the MPPAA. *See* 29 U.S.C. § 1451(b); *Trustees of the Local 531 Pension Plan v. Corner Distribs., Inc.*, 2008 WL 2687085, at *5 (E.D.N.Y. July 8, 2008). In that regard, I note that ERISA also mandates an award of liquidated damages. 29 U.S.C. § 1132(g)(2). Plaintiff, however, did not request liquidated damages in its complaint or its motion. Accordingly, I decline to recommend a liquidated damages award.

[4] The Code of Federal Regulations also states that interest accrues until paid. 29 C.F.R. §§ 4219.32(c), (e).

The interest awarded on overdue withdrawal liability "shall be charged or credited for each calendar quarter at an annual rate equal to the average quoted prime rate on short-term commercial loans for the fifteenth day of the month preceding the beginning of each calendar quarter," unless the plan's rules specify a different rate. 29 C.F.R. § 4219.32(b). Plaintiff's actuary calculated interest for defendant's withdrawal liability using the rate specified in § 4219.32, which varied from 3.25% to 8.25% during the relevant period. *See* Reid Decl. ¶ 5 & Ex. 2. Plaintiff has not provided any documentation of the regulatory interest rates in effect. Nonetheless, the court may take judicial notice of the interest rates and it appears that plaintiff applied the correct interest rates. *See* http://www.pbgc.gov/prac/interest/oodwl.html.

Plaintiff's actuary, however, compounded the interest. Reid Decl. Ex. 2. Plaintiff has not provided any support for compounding interest and the court is not aware of any authority for doing so. To the contrary, the only relevant authority I have found recommends that interest on withdrawal liability not be compounded. *Bd. of Trustees of the Private Sanitation Union Local 813 Pension Fund v. Metro Demolition Contracting Corp. Inc.*, 2010 WL 5621275, at *4 (E.D.N.Y. Sept. 17, 2010). Accordingly, applying the method in 29 C.F.R. § 4219.32(c), the court has recalculated the interest through June 30, 2011 as follows[5]:

| | |
|---|---|
| 4th Qtr. 2006 | 212.43 |
| 1st Qtr. 2007 | 3,186.44 |
| 2d Qtr. 2007 | 3,186.44 |
| 3d Qtr. 2007 | 3,186.44 |
| 4th Qtr. 2007 | 3,186.44 |
| 1st Qtr. 2008 | 2,800.20 |

---

[5] The interest rate has remained at 3.25% since April 1, 2009. *See* http://www.pbgc.gov/prac/interest/oodwl.html (last visited June 21, 2011).

| | |
|---|---|
| 2d Qtr. 2008 | 2,317.41 |
| 3d Qtr. 2008 | 1,931.18 |
| 4th Qtr. 2008 | 1,931.18 |
| 1st Qtr. 2009 | 1,544.94 |
| 2d Qtr. 2009 | 1,255.26 |
| 3d Qtr. 2009 | 1,255.26 |
| 4th Qtr. 2009 | 1,255.26 |
| 1st Qtr. 2010 | 1,255.26 |
| 2d Qtr. 2010 | 1,255.26 |
| 3d Qtr. 2010 | 1,255.26 |
| 4th Qtr. 2010 | 1,255.26 |
| 1st Qtr. 2011 | 1,255.26 |
| 2d Qtr. 2011 | 1,255.26 |
| 3d Qtr. 2011 | 1,255.26 |
| **Total** | **36,035.73** |

Accordingly, I recommend that plaintiff be awarded interest on the initial withdrawal liability amount in the amount of $36,035.73.

Plaintiff also seeks interest on defendant's reallocation liability. For the period of July 1, 2007, the date of the mass withdrawal, through June 30, 2009, the date plaintiff notified defendant of its reallocation liability, plaintiff's actuary calculated interest at the rate of 5.14%. The actuary states that this interest rate was the "PBGC [Pension Benefit Guaranty Corporation] select interest rate for June, 2007." Reid Decl. Ex. 2 n.2. Again, plaintiff has not offered any documentation supporting this interest rate and the court has not independently been able to

verify this rate. Moreover, the court is unclear as to the basis for awarding interest on this liability prior to the date defendant received notice of the liability amount in 2009. Compl. ¶ 16. Accordingly, I recommend denying plaintiff's request for interest for this period.

In addition, plaintiff seeks interest on the unpaid reallocation liability as of August 26, 2009, which is sixty days after plaintiff sent notice of defendant's reallocation liability. Reid Decl. Ex. 2. Plaintiff's actuary calculated interest, again compounded, at the rate specified in 29 C.F.R. § 4219.32, which has remained at 3.25%. *See supra* n.5.

The court has recalculated simple interest on the unpaid reallocation liability from August 26, 2009 through June 30, 2011 as follows:

| | |
|---|---|
| 3d Qtr. 2009 | 462.99 |
| 4th Qtr. 2009 | 1,157.47 |
| 1st Qtr. 2010 | 1,157.47 |
| 2d Qtr. 2010 | 1,157.47 |
| 3d Qtr. 2010 | 1,157.47 |
| 4th Qtr. 2010 | 1,157.47 |
| 1st Qtr. 2011 | 1,157.47 |
| 2d Qtr. 2011 | 1,157.47 |
| 3d Qtr. 2011 | 1,157.47 |
| **Total** | **9,722.76** |

Accordingly, I recommend that plaintiff be awarded interest on the reallocation liability in the amount of $9,722.76. Moreover, plaintiff is entitled to interest on the entire amount of $296,952 at the rate specified in 29 C.F.R. § 4219.32 from July 1, 2011 until the date of judgment and I recommend that plaintiff be awarded this additional interest as well.

C.  *Attorney's Fees and Costs*

Finally, plaintiff seeks attorney's fees and costs in the amount of $5,395.79. Hirschhorn Aff. ¶ 10. An award of attorney's fees under Section 1132(g)(2) is mandatory. *See Trustees of the Local 531 Pension Plan*, 2008 WL 2687085, at *5. Plaintiff has submitted contemporaneous time records with its motion in compliance with *New York State Association for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983) and *Scott v. City of New York*, 643 F.3d 56, 58-59 (2d Cir. 2011). *See* Hirschhorn Aff. Ex. 6. Although the total amount of hours for which fees are sought is reasonable, the court cannot recommend an award at the hourly rates that plaintiff seeks, especially where no information about the attorneys' qualifications are provided. Plaintiff seeks reimbursement for the following individuals: Hirschhorn, an associate attorney, at the hourly rate of $650; Cacace, an attorney, at the hourly rates of $260 to $360; paralegal and "litigation support" staff at the rates of $150 to $260. The rates plaintiff seeks are well above the rates typically awarded in ERISA cases. *See, e.g.*, *Finkel v. Millennium Fire Servs., LLC*, 2011 WL 866995, at *17 (E.D.N.Y. Feb. 16, 2011) (approving the hourly rate of $250 for a partner with over thirty years of ERISA experience and a paralegal rate of $80); *Gesualdi v. Frank J. Batchelder Transp. LLC*, 2010 WL 4608270, at *4 (E.D.N.Y. Aug. 5, 2010) (approving the hourly rate of $300 for an attorney with forty years of ERISA experience and a paralegal rate of $80). Because the rates are almost double the amounts that this court typically awards, and because plaintiffs have not provided any information justifying such rates, I recommend a 40% reduction in plaintiff's fee request. *See Carey*, 711 F.2d at 1146 (recognizing that a court may make across-the-board reductions). Accordingly, I respectfully recommend that plaintiff be awarded $2,753.40 in attorney's fees.

Plaintiff seeks $806.79 in costs. Hirschhorn Aff. ¶ 10. Plaintiff has failed to itemize the costs for which it is seeking reimbursement. Nonetheless, it appears that plaintiff is seeking $350 in filing fees, $435 in process server fees, and $21.79 in miscellaneous costs. Hirschhorn Aff. Ex. 6. I find these costs reasonable and compensable and recommend the full costs be approved. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 369 F.3d 91, 98 (2d Cir. 2004) (recognizing that "[r]easonable expenses incurred in representing a client . . . should be included in the attorney's fee award if such expenses are usually billed"). Accordingly, I recommend that plaintiff be awarded $3,560.19 in fees and costs.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that plaintiff be awarded $296,592 in withdrawal liability, $45,758.49 in interest, and $3,560.19 in fees and costs for a total of $346,270.68. I further recommend that plaintiff be awarded interest on the $296,592 from July 1, 2011 through the date of judgment, at the rate specified in 29 C.F.R. § 4219.32, to be calculated by the Clerk of the Court at the time of judgment. Any objections to this Report and Recommendation must be filed within fourteen days of this Report and in any event no later than August 25, 2011. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989). Plaintiff is hereby directed to serve a copy of this Report and Recommendation upon defendant at its last known address, and to file proof of service with the Court.

Dated: Brooklyn, New York
August 8, 2011

/s/
**STEVEN M. GOLD**
**United States Magistrate Judge**

*U:\kp 2011\UFCW vs. Ehmer final.docx*